Thomas K. Wolf, OSB #794558
THOMAS K. WOLF, LLC.
5200 S. W. Meadows Rd., Suite 150
Lake Oswego, OR 97035
Telephone: (503) 697-8455
Email: tom@tkwllc.com
Attorney for Plaintiff



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| WALL TO WALL TILE & STONE, LLC, | ) | |
| WALL TO WALL TILE & STONE- | ) | |
| OREGON, LLC, WALL TO WALL TILE | ) | |
| AND STONE - IDAHO, LLC, | ) | Lead Case No. 19-32600-dwh7 |
| Debtors. | ) | (Jointly administered with |
| _____ | ) | Case Nos. 19-32599-dwh7 & |
| SAXUM STONE LLC, | ) | 19-32603-dwh7) |
| | ) | |
| Plaintiff, | ) | ADVERSARY COMPLAINT |
| | ) | Adv. Proc. No. _____ |
| v. | ) | |
| | ) | |
| LENNAR MULTIFAMILY BUILDERS, | ) | |
| LLC, fdba LMC Construction, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>COMPLAINT FOR DECLARATORY RELIEF AND JUDGMENT ON ACCOUNT</u>


Page 1

Adversary Complaint

Plaintiff, Saxum Stone, LLC (hereafter "Saxum"), by and through its undersigned attorney, Thomas K Wolf, hereby brings this action against Lennar Multifamily Builders, LLC, fdba LMC Construction, LLC (hereafter "LMC"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Saxum, is a limited liability company organized under the laws of Washington.

2.     Defendant, LMC, is a limited liability company under the laws of Delaware.

3.     On July 16, 2019, Debtors, Wall to Wall Tile & Stone, LLC, Wall to Wall Tile & Stone - Oregon LLC, and Wall to Wall Tile & Stone - Idaho, LLC (collectively "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon, under lead case No. 19-32600-dwh11. On April 6, 2020, each of Debtor's Chapter 11 cases were converted to Chapter 7 cases.

4.     This court has jurisdiction over this Complaint pursuant to 28 USC §§ 157(b) and 1334 (b) because it is related to the bankruptcy cases referenced in the case caption pending before the Court under lead case number 19-32600-dwh, (hereafter "The Chapter 7 Case").

5.     In the court's Order Granting Trustee's Motion For Order Approving Sale of Estate Assets Free and Clear of Liens, Claims, and Encumbrances filed May 14, 2020, (hereafter the "Sale Order") this court retained jurisdiction: "to resolve any controversy or claim arising out of or related to the implementation of the Order..." (Docket No. 378). A true copy of the Sale Order is attached hereto as Exhibit "1".

6.     Venue is proper in the Court pursuant to 28 USC § 1409 as a proceeding related to

Thomas K Wolf LLC
5200 SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

the Chapter 7 Case.

FACTUAL BACKGROUND

**The Debtor Supplied Building Materials and Labor to LMC**

7.      Prior to the closing of the sale of assets from the Debtor to Saxum pursuant to the Sale Order, LMC became obligated to Debtor in the amount of $149,915.02 on account for certain building materials and installation labor, supplied by the Debtor for the benefit of LMC, under the Glisan Apartment Project Subcontract No. 8518002-024, including agreed change orders 1, 2, 3, 4 & 6. (hereinafter "GAP Agreement").

8.      While LMC accepted delivery of the materials and labor from the Debtor, LMC has refused or failed to pay for such materials and labor in breach of the GAP Agreement.

9.      Accordingly, as of the date of the Sale Order,  May 14, 2020, LMC owed Debtor the balance of the GAP Agreement account in the sum of $149,915.02 for the materials delivered and installed by Debtor, under the GAP Agreement (hereafter the "Outstanding GAP Account Receivable").

**Saxum Purchased Substantially All Of The Assets Of The Debtor, Including The Outstanding Account Receivable for the Glisan Apartment Project, Free and Clear of All Liens, Claims and Encumbrances**

10.      On May 14, 2020, the court entered the Sale Order, which approved the sale of substantially all of the assets of Debtor to Buyer, Saxum, pursuant to that certain Agreement for Sale and Purchase of Business Assets dated May 1, 2020 (hereinafter the "APA").  A true copy of the APA are attached hereto as Exhibit "2".

11.      The APA provided that Buyer, Saxum, would acquire all of Debtor's "Assets"

Thomas K Wolf LLC
5200  SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

(APA section 1.1.). "Assets" included "accounts receivable". Accordingly, the Outstanding GAP Account Receivable constitutes a part of the purchased Assets under the APA.

12.     The APA further provided the "Buyer will not assume or be responsible for any liabilities or obligations of Seller or Debtor's other than as described..." (APA section 1.2.).

13.     No contracts between LMC and Debtor were assigned to the Buyer and assumed by the Buyer under the APA.

14.     All executory contracts or agreements between LMC and Debtor, including without limitation, Glisan Apartments Project Subcontract No. 8518002-024, and Kirkland Totem Lakes Apartments Subcontract No. 8518001-036, (hereafter the "Kirkland Project"), were rejected by operation of law under 11 USC §365(d)(1).

15.     The Sale Order also includes several provisions relevant to the current dispute between Saxum and LMC:

> a.     Paragraph D provides that: "A reasonable opportunity to object and to be heard regarding the relief requested in the Motion has been afforded to all creditors, parties in interest and other entities, including, but not limited to (a) the Debtors, (b) all creditors of the Debtors,..." (Sale Order ¶ D).
>
> b.     Paragraph 3 provides that: The Sale of the Assets to Saxum is approved free and clear of all liens, claims, and encumbrances ..." (collectively hereafter the "Claim(s)" or "claim(s)")...." (Sale Order ¶ 3).
>
> c.     Paragraph 5 of the Sale Order provides that: "Saxum will not have

Thomas K Wolf LLC
5200 SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

successor liability to any creditor who holds a claim as of the Closing Date except as specifically stated in the APA, and all creditors will be forever enjoined from seeking to enforce or collect any said claim for or against Saxum." (Sale Order ¶ 5).

16.     In the Sale Order, the court retained jurisdiction "to resolve any controversy or claim arising out of or related to the implementation of this Order or the transactions contemplated hereof."  (Sale Order ¶ 11).

17.     LMC did not object to the Sale Order, or the terms of the APA, despite receiving notice of the same.

18.     On May 14, 2020,  the sale of the Debtor's Assets to Saxum was closed in accordance with the terms of the APA and Saxum became owner of the Assets, including the Outstanding GAP Account Receivable, pursuant to the Trustee's Bill of Sale, a true copy of which is attached hereto as Exhibit "3".

19.     On June 12, 2020, counsel for Saxum sent a demand letter to LMC's counsel, informing LMC of the amount LMC owes Saxum for the Outstanding GAP Account Receivable, and requesting payment within 10 days.  A true and correct copy of Saxum's demand letter (without attachments) is attached hereto as Exhibit "4".  The demand letter also stated that Saxum purchased the accounts receivable under the Sale Order free and clear of all liens, claims, and encumbrances.

20.     On June 15, 2020, LMC's counsel responded to Saxum's counsel's June 12, 2020 letter stating that LMC would not pay any outstanding accounts receivable owed to Saxum

Thomas K Wolf LLC
5200  SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

asserting a right to set off alleged damages from the Kirkland Project despite the provisions in the Sales Order set out above in paragraph 15 b & c.

21.    On information and belief, LMC asserts in defense to the Outstanding GAP Account Receivable that:

   a.    LMC allegedly has incurred damages as a result of the Debtor's rejection of LMC's executory contract(s) with the Debtor and that LMC's payment obligation for the Outstanding GAP Account Receivable should be reduced by the amount of those damages; and

   b.    LMC has incurred damages on the Kirkland Project, and that LMC's payment obligation for the Outstanding GAP Account Receivable should be reduced by the amount of those damages.

<u>**COUNT I**</u>

<u>**DECLARATORY RELIEF**</u>

22.    Saxum realleges the allegations in Paragraphs 1 through 21, as though fully incorporated herein.

23.    LMC disputes that it owes Saxum the Outstanding GAP Account Receivable by asserting that: (a) the Outstanding GAP Account Receivable should be reduced by alleged damages owed to LMC by the Debtor as a result of the rejection of executory contracts between LMC and the Debtor; and/or (b) that the Outstanding GAP Account Receivable should be reduced by damages alleged to have been incurred by LMC related to the Kirkland Project.

24.    An actual controversy now exists between Saxum and LMC as to the commercial

Thomas K Wolf LLC
5200 SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

dispute described above, and it is within the jurisdiction of the Court under 28 USC § 2201 to render a declaratory judgment as to the parties' respective rights.

25. Saxum is entitled to a declaration that: (a) Saxum is the owner of the Outstanding GAP Account Receivable; (b) LMC is not entitled to any reduction in the Outstanding GAP Account Receivable as a result of any damages LMC allegedly has as a result of the rejection of its executory contracts with the Debtor; (c) the Sale Order and APA, including the language that Saxum bought the Debtor's Assets free and clear of any claims and enjoining LMC from making any such claims, applies to and is binding upon LMC; and (d) LMC is not entitled to any reduction in the Outstanding GAP Account Receivable as a result of any damages LMC allegedly has incurred related to the Kirkland Project.

**COUNT II**

**JUDGMENT ON ACCOUNT**

26. Saxum realleges the allegations in Paragraphs 1 through 21, and 22 through 25 as though fully incorporated herein.

27. LMC is liable to Saxum for the full amount of the Outstanding GAP Account Receivable in the amount of $149,915.02 together with interest at 9% per annum, as provided under ORS 82.010 (1)(a), from April 18, 2020, until paid.

**PRAYER FOR RELIEF**

WHEREFORE, Saxum respectfully requests that the Court issue an order: (1) declaring that pursuant to the Sale Order and APA (a) Saxum is the owner of the Outstanding GAP Account Receivable, (b) LMC is not entitled to any reduction in the Outstanding GAP Account

Page 7

Adversary Complaint

Receivable as a result of any damages LMC allegedly has as a result of the rejection of its executory contracts and/or alleged damages related to the Kirkland Project; (c) the Sale Order and APA, including, without limitation, the language that Saxum purchased the assets of Debtor free and clear of any claims by LMC and enjoining LMC from making any such claims applies to and is binding upon LMC;  (2) LMC is liable to Saxum for the full amount of the Outstanding GAP Account Receivable in the amount of $149,915.02 together with interest at 9% per annum, as provided under ORS 82.010 (1)(a), from April 18, 2020, until paid; and (3) granting such other relief as the Court may deem just, equitable or appropriate under the circumstances;

DATED this 14 day of August, 2020.

/s/Thomas K. Wolf
THOMAS K. WOLF, OSB #794558
Attorney for Plaintiff
tom@tkwllc.com

Thomas K Wolf LLC
5200  SW Meadows Rd., Ste 150
Lake Oswego, OR 97035
tom@tkwllc.com

Adversary Complaint

Below is an order of the court.

_David W. Hercher_

DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Wall to Wall Tile & Stone, LLC,**<br>**Wall to Wall Tile & Stone – Oregon LLC,**<br>**Wall to Wall Tile & Stone – Idaho LLC,**<br><br>Debtors. | Lead Case No. 19-32600-dwh7<br>(Jointly Administered with Case Nos.<br>19-32599-dwh7 and 19-32603-dwh7)<br><br>**ORDER GRANTING TRUSTEE'S**<br>**MOTION FOR ORDER APPROVING**<br>**SALE OF ESTATE ASSETS FREE AND**<br>**CLEAR OF LIENS, CLAIMS, AND**<br>**ENCUMBRANCES** |

This matter came before the Court based on the "Trustee's Motion for Order Approving Sale of Estate Assets Free and Clear of Liens, Claims, and Encumbrances" (Dkt. 363) (the "**Motion**") of chapter 7 trustee Amy Mitchell (the "**Trustee**"). Only one response was filed – a limited objection by Baffco Enterprises, LLC (Dkt. 370) (the "**Limited Objection**"). A hearing on the Motion was held on May 14, 2020.

Based on the Motion and the record in these jointly administered cases including the Debtors' Conversion Schedules (Dkt. 356), the Trustee's Motion for Expedited Hearing and Shortened Notice re: Trustee's Sale Motion (Dkt. 361), the Trustee's Notice of Sale Hearing

**Page 1 of 8 –** **ORDER GRANTING TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

EXHIBIT
Page 1 Of 8

Documents, including the complete Asset Purchase Agreement dated May 1, 2020 with Schedules (the "**APA**") and the proposed Sale Order (Dkt. 368), the Declarations in Support of the Motion signed by Amy Mitchell (Dkt. 374), Tony Kincke (Dkt. 372), and Hardeep Grewal (Dkt. 373), and the hearing on May 14, 2020, and finding good cause; now therefore the Court hereby FINDS AND CONCLUDES:

      A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and this matter in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.     The statutory predicates for the relief provided in this order are 11 U.S.C. §§ 105(a) and 363(b) and (f), and FRBP 2002, 6004, and 9014.

      C.     As evidenced by the Trustee's certificate of service in the Motion and based on shortened time for good cause shown pursuant to the Trustee's Motion for Expedited Hearing and Shortened Notice re: Trustee's Sale Motion (Dkt. 361) and the Order Thereon (Dkt. 362), (i) proper, timely, adequate and sufficient notice of the proposed sale and the hearing thereon have been provided in compliance with the various applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the procedural due process requirements of the United States Constitution; (ii) such notice was good and sufficient, and appropriate in the particular circumstances; and (iii) no other or further notice is or shall be required.

      D.     A reasonable opportunity to object and to be heard regarding the relief requested in the Motion has been afforded to all creditors, parties in interest, and other entities, including, but not limited to (a) the Debtors, (b) all creditors of the Debtors, (c) all known parties who claim interests in or liens upon the Property, and (d) the Office of the United States Trustee.

      E.     Approval of the proposed sale is in the best interest of the bankruptcy estates, their creditors, and other parties in interest. The terms of the sale of the assets are fair

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT
Page \_\_2\_\_ Of \_\_8\_\_

and reasonable and the transactions contemplated thereunder reflect the Trustee's prudent business judgment under all of the relevant circumstances.

      F.     The Trustee may sell the assets free and clear of all liens, claims, and encumbrances, including, without limitation, the interests of the parties specifically set forth in the Motion (*i.e.,* Wells Fargo Equipment Finance Inc. and Wells Fargo Bank, NA) because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been established.

      G.     As set out in the Motion, the Trustee and the prospective buyer Saxum Stone, LLC ("**Saxum**") entered into the APA. The purchase price is $4,364,519, subject to decrease for accounts receivable collected by the Trustee on or before the Adjustment Date[1] and increase for rents paid by the Trustee for the balance of post-Closing May rents;

      H.     According to the Trustee's Declaration, no timely overbids were received, and no auction was held.

      I.     At the conclusion of the Hearing, Saxum was deemed the successful purchaser;

      J.     The APA was offered at arms' length. Saxum has acted in good faith and without collusion or fraud of any kind with respect to the APA;

      K.     Saxum is not an "insider" or "affiliate" of Debtors, as those terms are defined in the Bankruptcy Code;

      L.     Neither the Trustee nor Saxum engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code with respect to the consummation of the transactions contemplated in the APA;

      M.     Saxum is purchasing the Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protections afforded by Section 363(m) of the Bankruptcy Code;

---

[1] Capitalized terms in this Order have the same meaning and definition as in the APA.

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT
Page 3 of 8

N.      The Trustee has taken reasonable actions to obtain the highest or otherwise best value for the Assets;

O.      Notice of the sale of Assets was sufficient to comply with the notice requirements of the Bankruptcy Code; and

The Court having reviewed the Motion, the supporting Declarations, the Limited Objection, the APA, the case record – including the sale-related filings listed above, and having considered the presentations of counsel and the evidence before the Court; now, therefore,

IT IS HEREBY ORDERED that:

1.      As set forth herein, the Motion is GRANTED;

2.      The terms and conditions of the APA are approved. The Trustee is authorized to sell on an "as is, where is" basis all of the estates' Assets, as defined and limited in Section 1.1 of the APA,[2] to Saxum for the purchase price of $4,364,519, subject to decrease for accounts receivable collected by the Trustee on or before the Adjustment Date according to the formula set forth in the APA, and increase for the amounts paid by (or remaining due from) the Trustee for rent from the Closing Date through May 31, 2020 as to the three assumed leases. In

---

[2] "Assets" is defined in the APA as "all of the Assets of the Estate useful in the Business, including, but not limited to accounts receivable, equipment, inventory, supplies, the real property leases listed in Schedule 1.2, software, licenses, Intellectual Property, books and records, tools, vehicles listed on Schedule 1.1, all claims, if any, against Buyer, its members, agents, attorneys, officers, and directors ("**Buyer Claims**"); provided, however, that the purchased assets do not include:

    (a)  cash;
    (b)  vehicle leases with Enterprise Fleet Management, Inc. ("**Enterprise**");
    (c)  claims and causes of action, if any,
        [i]   against present or former insiders or
        [ii]  otherwise listed in paragraphs 4 and 8 of the Conversion Declaration filed on April 20, 2020 as Lead Case Docket No. 356 (the "**Conversion Declaration**") (other than claims against Buyer and Buyer's members) or
        [iii] arising under or pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code, other than the Buyer Claims;
    (d)  Benefit Plans of the Seller;
    (e)  any vehicles not listed on Schedule 1.1 and any other items listed in paragraphs 3(i)-(j) of the Conversion Declaration; and
    (f)  claims pursuant to any insurance policy insuring the Debtors' for general liability or for acts of officers and owners of Debtors, other than the Buyer Claim[s]"

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT 1
Page 4 of 8

regards to the two rejected leases, the price shall not be adjusted but Saxum shall assume liability and hold the Trustee harmless for administrative rent claims of these landlords arising after May 15, 2020;

3.    The sale of the Assets to Saxum is approved free and clear of all liens, claims, and encumbrances, with such interests attaching to the sale proceeds in accordance with the priorities set forth in the Motion. All sale proceeds – other than (a) rents due to the Debtors' five landlords (*i.e.,* the cure amounts for the three assumed and assigned leases through May 31, 2020; and the chapter 7 administrative rent claims arising from April 6 through May 15, 2020 as to the two non-assumed leases); and (b) the agreed-upon carveout to the Trustee of $320,000 (the sum of (a) and (b) above, the "**Net Proceeds**" to the Estate) – shall be paid at closing to either Wells Fargo Equipment Finance Inc. or Wells Fargo Bank, NA (the "**Wells Fargo Entities**"), to be allocated between themselves as they have separately agreed between themselves;

4.    As requested by Baffco Enterprises, LLC, no distribution of the Net Proceeds shall be made on account of any chapter 11 claim until the Court adjudicates the assertions made by Baffco in its Limited Objection (Dkt. 370);

5.    Saxum will not have successor liability to any creditor who holds a claim as of the Closing Date except as specifically stated in the APA, and all creditors will be forever enjoined from seeking to enforce or collect any such claim from or against Saxum;

6.    Saxum shall cooperate with the Debtors' customers who fully paid for products that are completed and sitting in the Debtors' facilities, as well as other similarly situated parties ("**Bailors**") who have assets that were not included in the Assets purchased ("**Bailments**"), including cooperation in the transfer of possession of Bailments to Bailors. Saxum is not obligated to incur expenses in such transfer of possession, but shall allow reasonable access for Bailors to remove Bailments owned by Bailors. Bailors shall provide Saxum with

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT

Page 5 of 8

Case 19-32600-dwh7    Doc 378    Filed 05/14/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

reasonable notice prior to transfer of Bailments. (Known Bailments include the drill press and personal tools owned by two employees specifically discussed at the Meeting of Creditors);

7.      As authorized by separate order of this Court entered concurrently, the Trustee assigns, and Saxum assumes, the Debtors' real property leases with (a) <u>5410 West Boise LLC</u> for the property located at 3707 E. Pine Avenue, Meridian, Idaho; (b) <u>GT Properties, LLC</u> for the real property located at 1610 Markle Avenue; and (c) <u>B&W Warehouse</u> for the property located at 1305 W. 17th Street, Vancouver, Washington;

8.      As to the remaining two locations of the Debtors (*i.e.,* in Kent, WA and at 1500 D St. in Vancouver, WA), Saxum assumes chapter 7 administrative rent obligations of the Trustee arising after May 15, 2020. Saxum shall remove all property and vacate from each premises by no later than May 31, 2020, to the extent Saxum does not make alternative arrangements with the respective landlords.

9.      Upon the payment to the Wells Fargo Entities of the amounts due under the terms of this Order from the closing of the APA, then neither of the Wells Fargo Entities shall have any further right to participate in any distributions from any of the three estates on account of an unsecured claim, and Trustee shall be deemed to have released the Wells Fargo Entities and each of them from any and all claims, causes of action, claims for relief, suits, debts, demands and/or obligations of any nature whatsoever, in law or in equity, whether known or unknown, matured or unmatured, accrued or unaccrued, direct or indirect, for or by reason of any cause, matter, event, occurrence or thing whatsoever, including but not limited to any claims under chapter 5 of the Bankruptcy Code, and any claims or rights under section 506(c) of the Bankruptcy Code to recover any costs or expenses from property securing any claims of the Wells Fargo Entities; provided however that this release shall not apply as to claims relating to the vehicles of the Debtors that are excluded from this sale and that remain subject to perfected security interests of the Wells Fargo Entities; and provided however, for the avoidance of any

**Page 6 of 8 – ORDER GRANTING TRUSTEE'S MOTION FOR ORDER APPROVING SALE OF ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

EXHIBIT

Page 6 Of 8

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

Case 19-32600-dwh7    Doc 378    Filed 05/14/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

doubt, the Wells Fargo Entities do not waive any rights to seek to recover on their claims from any person or entity other than the Trustee;

      10.    The Assets shall not include payroll records and any other personally identifiable information (PII) or protected health information (PHI) maintained by the Debtors on employees and independent contractors, all of which shall remain in the Trustee's custody or shall otherwise be destroyed. Otherwise, Saxum shall maintain the Debtors' electronic and physical files and records (the "**Records**"). Saxum shall not destroy any Records prior to the closure of the Debtors' bankruptcy cases without an order of the Court. Saxum shall provide reasonable access to the Trustee to the Records upon request. Saxum shall also provide a copy of or direct access to the Debtors' accounting data in Stone Profits and in QuickBooks prior to any changes being made to such data by Saxum.

      11.    This Court shall retain jurisdiction to resolve any controversy or claim arising out of or related to the implementation of this Order or the transactions contemplated thereby; and

      12.    All stays, including, without limitation, those arising under Bankruptcy Rule 6004, are waived or otherwise inapplicable and this Order shall go into effect immediately upon its entry.

# # #

<em>See Certification of Counsel on Following Page</em>

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT 1

Page 7 Of 8

<u>LBR 9021-1 Certification</u>: This order in substantially the same form was circulated in the Trustee's Notice of Sale Documents, with clarifying changes discussed at the hearing – including to resolve the Limited Objection. It has been uploaded for immediate entry based on the discussion with the Court at the hearing, after approval by counsel for the objecting party Baffco Enterprises LLC as well as counsel for the consenting secured lender (Wells Fargo) and the buyer (Saxum).

Presented by:

LEONARD LAW GROUP LLC

By: /s/ Justin D. Leonard
      Justin D. Leonard, OSB 033736
      Direct: 971.634.0192
      Email: jleonard@LLG-LLC.com
Counsel for Chapter 7 Trustee Amy Mitchell

cc: ECF Parties, and the following interested parties requiring notice by US Mail:
- Tyler Kruckenberg, 28700 NE Lewisville Hwy, Battle Ground, WA 98604-7536
- Arch & Beam Global LLC, c/o Matthew English, 2500 Camino Diablo #110, Walnut Creek, CA 94597
- Bennington & Moshofsky PC, 4800 SW Griffith Dr #350, Beaverton, OR 97005
- Edward Hostmann, Inc., 352 2nd St. Apt. 301, Lake Oswego, OR 97034-3288
- HB Morris Financial Svcs Inc, c/o Mike Day, POB 2557, Battle Ground, WA 98604
- ODR Bkcy, 955 Center St NE, Salem, OR 97301-2555
- JEFFERY POMERANTZ, 10100 Santa Monica Blvd 13th Fl, Los Angeles, CA 90067
- JASON J. ROSELL, 150 California Street 15th Floor, San Francisco, CA 94111
- MICHAEL A. SWEET, 345 California Street #2200, San Francisco, CA 94104

LEONARD LAW GROUP LLC
1 SW Columbia, Ste. 1010
Portland, Oregon 97204
www.leonard-law.com

EXHIBIT
Page 8 Of 8

Case 19-32600-dwh7    Doc 378    Filed 05/14/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

# AGREEMENT FOR
# SALE AND PURCHASE OF BUSINESS ASSETS

This Agreement for Sale and Purchase of Business Assets (the *"Agreement"*) is dated May 1, 2020 (the *"Effective Date"*), and is entered into by and among Saxum Stone, LLC , a Washington limited liability company (*"Buyer"*); Amy Mitchell (*"Seller"*) as the trustee of the chapter 7 bankruptcy estates of Wall to Wall Tile & Stone-Oregon LLC,  an Oregon limited liability company; Wall to Wall Tile & Stone, LLC, a Washington limited liability company; and Wall to Wall Tile & Stone-Idaho LLC, an Idaho limited liability company, jointly administered, case numbers 19-32600-dwh7, 19-32599-dwh7, and 19-32603-dwh7 (*"Debtors"*).

## <u>Background</u>

A.      Debtors operated businesses engaged in the manufacturing, sale, and installation of stone countertops and other interior surfaces out of three locations in Vancouver, Washington (warehouse, storage building and yard, and office), one location in Kent, Washington, and one location in Boise, Idaho (collectively, the *"Business"*).  Seller, in her capacity as trustee of the Bankruptcy Case, owns equipment, inventory, contract rights, leasehold interests, accounts receivables, cash and cash equivalents, intangible assets, intellectual property, and miscellaneous assets used in connection with the Business.

B.      On July 16, 2019, each Seller filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Oregon (the *"Bankruptcy Court"*), Lead Case No. 19-32600-dwh11. On April 6, 2020 each of Debtor's chapter 11 cases were converted to chapter 7 cases (*"Bankruptcy Case"*).

C.      Buyer desires to acquire substantially all the assets used, useful, or intended to be used, in the Business.

## Section 1
## ASSETS PURCHASED; LIABILITIES ASSUMED

**1.1.      Assets Purchased**. Subject to the terms and conditions set forth in this Agreement and the Sale Order, effective upon Closing, Seller hereby sells to Buyer and Buyer hereby purchases from Seller all of the Assets of the Estate useful in the Business, including, but not limited to accounts receivable, equipment, inventory, supplies, the real property leases listed in Schedule 1.2, software, licenses, Intellectual Property, books and records, tools, vehicles listed on Schedule 1.1, all claims, if any, against Buyer, its members, agents, attorneys, officers, and directors (*"Buyer Claims"*); provided, however, that the purchased assets do not include: a) cash; b) vehicle leases with Enterprise Fleet Management, Inc. (*"Enterprise"*); c) claims and causes of action, if any, against present or former insiders or otherwise listed in paragraphs 4 and 8 of the Conversion Declaration filed on April 20, 2020 as Lead Case Docket No. 356 (the *"Conversion Declaration"*) (other than claims against Buyer and Buyer's members) or arising under or pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code, other than the Buyer Claims; d) Benefit Plans of the Seller; e) any vehicles not listed on Schedule 1.1 and any other items listed in paragraphs 3(i)-(j) of the Conversion Declaration; and f) claims pursuant to any insurance policy insuring the Debtors' for general liability or for acts of officers and owners of

EXHIBIT 2
Page  1  Of  13

Debtors, other than the Buyer Claim (the "*Assets*"), free and clear of all mortgages, pledges, liens, security interests, options, claims (including but not limited to any claim for successor liability), charges, other encumbrances, interests, or restrictions of any kind (collectively, "*Liens*").

**1.2.**     **Assumed Liabilities.** Subject to the terms and conditions set forth in this Agreement and the Sale Order, Buyer assumes no liabilities of Seller other than the liabilities of a) the Assumed Leases listed in Schedule 1.2, and b) Seller's obligation to remove all property and vacate from Kent, along with any other premises subject to leases that Buyer does not assume, by no later than May 30, 2020, or to make alternative arrangements with the respective landlord(s), provided, however, that Buyer assumes no liability to any landlord for Enterprise vehicles not removed from the premises by Enterprise. Buyer will pay and perform the Assumed Leases pursuant to the terms thereof, but only for the periods of time the Assumed Lease are in effect after the Closing Date.

Buyer will not assume or be responsible for any liabilities or obligations of Seller or Debtors other than as described in this subsection.

## Section 2
## ALLOCATION OF PURCHASE PRICE

The Purchase Price will be allocated among the Assets in accordance with an allocation schedule, which shall be prepared by Buyer and delivered to Seller within 60 days after the Closing Date, and Buyer and Seller will be bound by that allocation in reporting the transactions contemplated by this Agreement.

## Section 3
## PURCHASE PRICE

**3.1.**     **Purchase Price.**  The purchase price for the Assets is $4,364,519 plus the pro-rata portion of rent paid by Seller from the Closing Date through the end of May under the Assumed Leases and for the remaining premises not subject to assumed leases (Kent and Vancouver), which is expected to be approximately $64,394.60 if the Closing Date is May 15, 2020 (the "*Purchase Price*"), which shall be paid to the Seller on the Closing Date, less the amount of the deposit provided for in Section 3.3 and the adjustments described below.

**3.2.**     **Purchase Price Adjustment.** The Purchase Price shall be adjusted as follows ("*Adjustments*"):

**3.2.1.     Accounts Receivable.**  The Purchase Price shall be reduced as of the close of business May 14, 2020 ("*Adjustment Date*"), as follows:  A) For payments received by Seller on or prior to the Adjustment Date on account of invoices that were paid within the invoice payment terms, the Purchase Price will be reduced by 80% of the payments received. B) For payments received by Seller on or prior to the Adjustment Date on account of invoices that were paid 1-30 days late of the invoice due date, the Purchase Price will be reduced by 65% of the payments received. C) For payments received by Seller on or prior to the Adjustment Date on account of invoices that were paid 31-60 days late of the invoice due date the Purchase Price will be reduced by 50% of the

payments received. D) For payments received by Seller on or prior to the Adjustment Date on account of invoices that were paid 61-90 days late of the invoice due date, the Purchase Price will be reduced by 30% of the payments received. E) For payments received by Seller on or prior to the Adjustment Date on account of invoices that were paid more than 90 days late of the invoice due date, the Purchase Price will be not be reduced. For purposes of determining payment adjustment, the invoice aging is deemed to be the aging category as of March 30, 2020 ("*Aging Category Date*").

    **3.2.2. Retention of Payments Received.** Seller shall retain all payments received on account of payments paid by customers on or prior to the Adjustment Date. Buyer shall retain all payments received on account of payments paid by customers after the Adjustment Date. Payments retained by Buyer shall not be subject to the adjustment provisions of this Section.

    **3.3    Good Faith Deposit.** By Monday, May 4, 2020, Buyer shall pay $660,000 (approximately 15% of the Purchase Price) to Seller as a good faith deposit ("*Deposit*"). The Deposit shall by refunded to Buyer if this Agreement is terminated as provided for in Section 14, not approved by the Bankruptcy Court as provided for in Section 15, or the transaction provided for herein is not consummated by the Closing Date and Buyer is not in breach; provided, however, that the Deposit shall not be refunded to Buyer if the transaction provided for herein is terminated because Buyer is in breach of this Agreement.

    **3.4    Early Access.** After the Effective Date and prior to Closing, Seller shall allow Buyer access to the Assets, books and records, and the premises subject to the Assumed Leases, including photos and videos created by the Seller or its agents post-conversion to document the assets within each of its business locations (including Kent) – all of which are being provided for the purpose of calculating the Adjustments provided for in Section 3.2 and for assurance to Buyer of the condition of the Assets prior to its payment of the Deposit.

Section 4
**OTHER AGREEMENTS**

    **4.1    Documents.** At the Closing, (a) Seller will execute a Bill of Sale in the form of **Schedule 4(a)** transferring ownership of the Assets to Buyer (the "*Bills of Sale*"); (b) Seller will execute a Trademark Assignment in the form of **Schedule 4(b)** (the "*Trademark Assignment*"); and (c) Seller will deliver such other instruments and documents as may be reasonably requested by Buyer to convey the Assets to Buyer (together, with the Sale Order (as defined in Section 16.3), the "*Related Agreements*").

    **4.2    Cooperation with Bailors.** After Closing, Buyer will cooperate with the Debtors' customers who fully paid for products that are completed and sitting in the Debtors' facilities and other similarly situated parties ("*Bailors*"), who have assets, then under control of Buyer, which assets were not included in the Assets purchased ("*Bailments*"), for the transfer of possession of Bailments to Bailors. Buyer is not obligated to incur expenses in such transfer of possession, but shall allow reasonable access for Bailors to remove Bailments owned by Bailors. Bailors shall provide Buyer with reasonable notice prior to transfer of Bailments.

EXHIBIT 2
Page 3 Of 13

Case 19-32600-dwh7    Doc 363    Filed 05/01/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

## Section 5
## SELLER'S REPRESENTATIONS AND WARRANTIES

Seller represents and warrants to Buyer, as of the Effective Date and as of the Closing Date as follows.

**5.1.** **Wells Fargo Consent.** Seller has obtained the consent of Wells Fargo Bank, National Association (the "*Bank*") and Wells Fargo Equipment Finance, Inc. ("*WFEF*") to sell the Assets free and clear of the Bank and WFEF's liens and claims for the Purchase Price, subject to a carve-out in an amount separately negotiated between Seller and the Bank.

**5.2.** **Required Consents.** Except for the consent of the Bankruptcy Court in the Bankruptcy Case, and the consents provided for in Section 5.1, no consent, approval, order, or authorization of, or registration, declaration, or filing with, any governmental entity is required with respect to Seller in connection with the execution, delivery, or performance of this Agreement or the agreements referenced herein.

**5.3.** **Title to and Condition of Assets.**

**5.3.1** Seller owns the Assets and has not sold, transferred, encumbered, leased, pledged, or disposed of any Assets other than as provided for in this Agreement.

**5.3.2** The Assets constitute substantially all of the tangible and intangible assets owned by Seller (whether or not appearing on Debtors' balance sheets, books and records, or bankruptcy schedules) and all of the Assets used by or useful to Seller in the operation of the Business.

**5.4.** **Intellectual Property.**

**5.4.1** **Identification of Intellectual Property.** "*Intellectual Property*" includes, without limitation, trademarks, copyrights, trade secrets, and confidential business information, including ideas, research, and development, know-how, formulae, compositions, manufacturing, and production processes and techniques, methods, technical data, designs, drawings, specifications, customer lists and contact information, supplier lists and contact information, price lists, bid records and proposals, other pricing and cost information, sales, non-public marketing and promotional materials, catalogues and advertising literature, strategic plans, business plans, marketing plans, annual budgets, inventions, developments, discoveries, know-how, concepts and ideas (whether or not patentable and whether or not reduced to practice), all improvements thereto and all patents, patent applications, and patent disclosures, and all rights, claims, benefits, and remedies under any laws and throughout the world with respect to any of the foregoing and any other proprietary rights in intangible forms of property.

**5.4.2** **Litigation and Claims.** Seller is not aware of any pending or threatened suit, action, claim, arbitration, grievance, litigation, administrative or legal or other proceeding, or investigation, against any Debtor or Seller or its licensors contesting the validity of, or Seller's right to use, any of the Intellectual Property.

EXHIBIT 2

Page 4 Of 13

**5.5.** **Full Disclosure**. To the best of Seller's knowledge, the representations and warranties of Seller contained in this Agreement do not contain any untrue statement of a material fact or omit a material fact required to be stated therein or necessary to make the statements made, in light of the circumstances under which such statements were made, not false or misleading.

Section 6
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller as follows:

**6.1.** **Company Existence**. Buyer has all requisite company power and authority to enter into this Agreement and the Related Agreements and to perform its obligations under them.

**6.2.** **Authorization**. The execution, delivery, and performance of this Agreement and the Related Agreements have been duly authorized and approved by the necessary members of Buyer. This Agreement and the Related Agreements, when approved by the Bankruptcy Court in the Sale Order, will constitute the legal, valid, and binding obligation of Buyer enforceable against Buyer in accordance with their respective terms. The execution and delivery by Buyer of this Agreement and the Related Agreements will not require any authorization, consent, approval, exemption, or other action by or notice to any court or administrative or governmental body, other than approval required by the Court in Seller's bankruptcy.

**6.3.** **Brokers and Finders**. Buyer has not employed any broker or finder in connection with the transactions contemplated by this Agreement and has taken no action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

**6.4.** **No Conflict**. The execution, delivery, and performance by Buyer of this Agreement and the Related Agreements to which Buyer is a party, the consummation of the transactions contemplated hereby and thereby, and the fulfillment of and compliance with the terms and conditions hereof and thereof, do not, with the passing of time or the giving of notice or both, (a) violate or conflict with any provision of Buyer's Articles of Organization; or (b) violate or conflict with, constitute a breach of or default under, result in the loss of any benefit under, permit the acceleration of any obligation under, or create in any party the right to terminate, modify, or cancel any agreement, contract, lease, license, instrument, or other arrangement to which Buyer is a party.

**6.5.** **Required Consents**. No consent, approval, order or authorization of, or registration, declaration, or filing with, any governmental entity is required with respect to Buyer in connection with the execution, delivery, or performance of this Agreement or the agreements referenced herein.

Case 19-32600-dwh7    Doc 363    Filed 05/01/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

## Section 7
## COVENANTS OF SELLER

**7.1.**     **No Transfer Before Closing**. Between the date of this Agreement and the Closing, Seller will not assign, sell, lease, encumber, pledge, dispose of, or otherwise transfer any interest in or dispose of any of the Assets, whether now owned or hereafter acquired.

**7.2.**     **Conditions**. Seller will use Seller's best efforts to effectuate the transactions described herein and to fulfill all the conditions of Seller's obligations under this Agreement and the Related Agreements, and will do all acts and things as may be required to carry out Seller's obligations under this Agreement and the Related Agreements.

**7.3.**     **Business Names**.  Upon Buyer's request and before closure of the Bankruptcy Case, Seller, upon Buyer's request, will cause the change of Debtors' names as registered with the Secretary of State of Washington, Idaho, or Oregon to a name that does not include the words "Wall to Wall" and will execute and deliver all documents required of Seller to allow Buyer to adopt "Wall to Wall" as a registered trade name or assumed business name in all such states.

**7.4.**     **Transfer Taxes**.  All documentary, transfer, sales, use, stamp, registration, and other such Taxes, and all conveyance fees, recording charges, and other fees and charges (including any penalties and interest) incurred in connection with the consummation of the transactions contemplated by this Agreement (collectively, "*Transfer Taxes*") shall be borne by Buyer. Seller shall file all necessary Tax Returns and other documentation with respect to all such documentary, transfer, sales, use, stamp, registration, and other such Taxes and fees, and Buyer shall join in such filing to the extent required by applicable law.

## Section 8
## COVENANTS OF BUYER

Buyer will use its best efforts to effectuate the transactions described herein and to fulfill all the conditions of Buyer's obligations under this Agreement and the Related Agreements, and will do all acts and things as may be required to carry out Buyer's obligations under this Agreement and the Related Agreements.

## Section 9
## CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS

Buyer shall not be obligated to consummate the transactions hereunder unless the following conditions are satisfied:

**9.1.**     This Agreement shall have been approved by the Bankruptcy Court as presented and without modification, unless otherwise agreed by Buyer on terms satisfactory to Buyer and Seller in their respective sole discretions.  The Bankruptcy Court must have entered the Sale Order approving this Agreement and authorizing Seller to perform Seller's obligations under this Agreement.

**9.2.**     Seller shall have complied with the covenants set forth in Section 7.

**9.3.**     The Closing Date is not later than May 18, 2020.

Section 10
**CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS**

The obligation of Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, or waiver by Seller, at or prior Closing, of each of the following conditions:

**10.1.**     All of Buyer's representations and warranties made in this Agreement shall be true and accurate in all respects.

**10.2.**     The Bankruptcy Court shall have entered the Sale Order.

Section 11
**BUYER'S ACCEPTANCE**

Buyer represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the business and the representations and warranties made by Seller in this Agreement. Buyer has not relied on any representations made by Seller other than those specified in this Agreement. Buyer further acknowledges that Seller has made no agreement or promise to repair or improve any of the leasehold improvements, equipment, or other personal property being sold to Buyer under this Agreement and that Buyer takes all such property in an "as is, where is" condition, except as otherwise provided in this Agreement. In other words, Buyer is purchasing Seller's Assets wherever the Assets are located.

Section 12
**RISK OF LOSS**

The risk of loss, damage, or destruction to any of the Assets will be borne by Seller before the Closing. In the event of such loss, damage, or destruction to any of the Assets, then the Purchase Price will be adjusted by an amount agreed on by Buyer and Seller, or as determined by the Bankruptcy Court, in an amount equal to the fair market value of the lost, damaged, or destroyed Asset as of the Closing Date.

Section 13
**CLOSING**

**13.1.     Time and Place**. The transactions will be consummated (the "*Closing*") effective immediately and automatically, without further action by any party, upon entry of the Sale Order in the Bankruptcy Case, which the parties anticipate to be May 15, 2020 but no later than May 18, 2020 (the "*Closing Date*").

**13.2.     Obligations of Seller at Closing**. Upon the Closing, Seller will deliver to Buyer the following:

    (a)     The Bills of Sale;

Case 19-32600-dwh7    Doc 363    Filed 05/01/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

(b)     The Trademark Assignment;

(c)     Possession of the Assets that are located at the Seller's business locations, including: 1) passwords and login credentials to all digital systems, computers, applications, programs, software, websites, affinity programs, and hand-held devices, 2) keys and combinations to all physical locks for vehicles, buildings doors, files, cabinets, and safes, and 3) alarm codes, 4) operating manuals for all equipment, and 5) policy, procedure, and process manuals, instructions, and methods;

(d)     The Related Agreements;

(e)     Assignment and assumption agreements relating to Assumed Liabilities.

(f)     Such other certificates and documents as may be called for by the provisions of this Agreement.

**13.3.    Buyer's Obligations at Closing**. Upon the Closing, Buyer will deliver to Seller the following:

(a)     Any certificates and documents as may be called for by the provisions of this Agreement;

(b)     Executed assignment and assumption agreements relating to Assumed Liabilities; and

(c)     Payment of the Purchase Price.

Section 14
## TERMINATION OF AGREEMENT

**14.1.    Right of Parties to Terminate**. Buyer may only terminate this Agreement, if Seller breaches this Agreement or the Sale Order has not been entered on or before May 18, 2020.

**14.2.    Effect of Termination**. If Buyer decides to terminate this Agreement pursuant to Section 14.1, it will promptly give written notice to Seller of such decision. In the event of a termination of this Agreement, the parties to this Agreement will be released from all liabilities and obligations arising under this Agreement with respect to the matters contemplated by this Agreement, other than for damages arising from a breach of this Agreement.

Section 15
## BANKRUPTCY PROVISIONS

**15.1.**    Seller and Buyer acknowledge that this Agreement and the sale of the Assets are subject to Bankruptcy Court approval. Seller must demonstrate that Seller has taken reasonable steps to obtain the highest or otherwise best offer possible for the Assets, including but not limited to, giving notice of the transaction contemplated by this Agreement to creditors and certain other interested parties. Further, Seller and Buyer acknowledge that, in the event that a

qualified bid is received, the Bankruptcy Court will, most likely, order an auction process for the sale of the Assets.

**15.2.** Seller will file with the Bankruptcy Court a motion (the "*Sale Motion*") seeking the Bankruptcy Court's issuance of an order (the "*Sale Order*") approving the sale of the Assets free and clear of liens, claims, interests, and encumbrances, scheduling an auction, if necessary, and hearing to consider the sale, and establishing other dates and deadlines.

**15.3.** The Sale Motion shall include a request that the proposed Sale Order include, among other things:

      (a)    That this Agreement was negotiated at arm's length, and Buyer has acted in good faith and without collusion or fraud of any kind;

      (b)    Buyer is not an "insider" or "affiliate" of any Seller as those terms are defined in the Bankruptcy Code;

      (c)    Neither Seller nor Buyer has engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code with respect to the consummation of the transactions contemplated in this Agreement;

      (d)    Buyer is purchasing the Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protections afforded by Section 363(m) of the Bankruptcy Code;

      (e)    Notice of the sale (and any required sale procedures) is sufficient to comply with the notice requirements of the Bankruptcy Code;

      (f)    All objections to the sale free and clear of liens, claims, interests, and encumbrances have been withdrawn or overruled, and Buyer therefore purchases the Assets free and clear of all liens, claims, interests, and encumbrances;

      (g)    Buyer is released from any potential liability in connection with the purchase of the Assets, including all claims for successor liability, other than Assumed Liabilities; and

      (h)    The fourteen-day stay provision of Bankruptcy Rule 6004 is waived.

**15.4.** Seller has served a copy of the Sale Motion on all parties entitled to notice under the Bankruptcy Code or as otherwise required by the Bankruptcy Court, and, without limiting the preceding, have also served a copy of the Sale Motion on all entities that claim any interest in or lien upon the Assets, and on all entities that expressed to Seller an interest in purchasing the Assets.

**15.5.** In order for a bid to be considered a "qualified bid" by Seller, the bidder must:

EXHIBIT 2
Page 9 Of 13

Case 19-32600-dwh7    Doc 363    Filed 05/01/20
Case 19-32600-dwh7    Doc 420    Filed 08/17/20

(a)     demonstrate the ability to pay initial and any subsequent bids in cash at
Closing; and

(b)     execute an asset purchase agreement, in a form substantially similar to this
Agreement with a Purchase Price of not less than $250,000, no later than two (2) days prior to
the hearing on the Sale Motion.

## Section 16
## MISCELLANEOUS PROVISIONS

**16.1.     Amendment.** This Agreement may be modified pursuant to the Buyer and
Seller's written consent or as set forth in the Sale Order.

**16.2.     Assignment.** Neither party may assign this Agreement or delegate its duties
without the prior written consent of the other party, which will not be unreasonably withheld.
Any attempt to assign without the other party's consent will be void and will give the non-
assigning party the right to immediately cancel and terminate this Agreement.

**16.3.     Attorney's Fees.** In any dispute arising out of or relating to this Agreement, the
prevailing party will be entitled to recover its reasonably incurred attorney's fees and other
expenses, together with all other amounts provided by law, including in any appellate or
bankruptcy proceeding.

**16.4.     Binding Effect.** This Agreement will be binding on and inure to the benefit of
the parties and their respective representatives, successors, and permitted assigns.

**16.5.     Counterparts.** This Agreement may be executed in counterparts. Signatures
delivered electronically will be effective as originals.

**16.6.     Entire Agreement.** This Agreement and the Related Agreements represent the
entire agreement between the parties as to their subject matter and supersede all prior
agreements, representations, or negotiations.

**16.7.     Interpretation.** This Agreement has been presented to and approved by the
Bankruptcy Court. No rule of construction or interpretation that disfavors the drafting party will
apply to the interpretation of this Agreement. Instead, this Agreement will be interpreted
according to the fair meaning of its terms.

**16.8.     Governing Law.** This Agreement will be governed by and construed according
to the laws of the State of Oregon, without reference to its conflict-of-laws principles.

**16.9.     No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the
parties and their successors and permitted assigns. This Agreement is not intended to, and will
not, confer any right upon any other person or entity except as set forth in the Sale Order.

**16.10.     Notices.** Any notice or consent required or permitted under this Agreement
must be in writing and will be effective upon the earliest of: (a) personal delivery; (b) one
Business Day after being deposited with an overnight courier (such as UPS or FedEx); or

EXHIBIT 2
Page 16 Of 13

(c) three Business Days after being deposited with the U.S. Postal Service, certified mail, return receipt requested; in each case addressed as follows:

**To Buyer:**

Saxum Stone, LLC
1523B SE Cutter LN
Vancouver, WA  98661

Attn: Tony Klincke

*with a copy to*:

Law Office of Shawn P. Ryan
620 S.W. Main St., Suite 612
Portland, OR 97205

Attn:  Shawn P. Ryan

**To Seller:**

Amy Mitchell, Trustee
PO Box 2289
Lake Oswego, OR 97035

Attn: Amy Mitchell

*with a copy to*:

Leonard Law Group
1 SW Columbia, Ste. 1010
Portland, OR 97204

Attn:  Justin Leonard

**16.11.    Severability.** Each provision of this Agreement is severable.  If any provision is unenforceable, then the Agreement will be reformed to the narrowest extent necessary to render it enforceable consistent with the parties' original intentions.

**16.12.    Venue; Jury Waiver.** All disputes arising out of or relating to this Agreement will be subject to the exclusive jurisdiction of the Bankruptcy Court or, if the Bankruptcy Case is closed, then the State and Federal courts in Portland, Oregon.  The parties waive any right to trial by jury in any such proceedings.

**16.13.    Definitions.**

**16.13.1**    *"Assets of the Estate"* means all assets owned by Debtors on the date the Bankruptcy Case was converted to chapter 7 and that are included as "property of the estate" as defined in 11 U.S.C. Section 541.

**16.13.2**    *"Benefit Plan"* means (a) all "employee pension benefit plans" and "employee benefit plans," as defined in Sections 3(2) and (3) of ERISA; (b) nonqualified deferred compensation plan (as defined in Section 409A of the Code); or (c) employment, severance, change-in-control, bonus, incentive, equity compensation, fringe benefit, retirement, and any other compensatory plan, program, agreement, contract or arrangement of any kind (whether or not subject to ERISA, written or oral, qualified or nonqualified, funded or unfunded, foreign or domestic, currently effective or terminated), and any trust, escrow, insurance contract, or other funding mechanism related thereto now in effect or required in the future as a result of the transaction, under which any present or former employee, independent contractor, officer or director of Debtors or any ERISA Affiliate has any present or future right to benefits, which is or was sponsored or maintained by Debtors or any ERISA Affiliate, or with respect to which Debtors or any ERISA Affiliate has had or could reasonably be expected to have any liability.

**16.13.3**    *"Business Day"* means any day that banks in Portland, Oregon, are generally open for business, notwithstanding any "stay at home order" or similar directive from the Governor of the State of Oregon or other federal or state directive closing businesses for the purpose of securing public health.

EXHIBIT 2,
Page 11 Of 13

**16.13.4** *"ERISA"* means the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder, all as in effect from time to time.

**16.13.5** *"ERISA Affiliate"* means any entity that would be deemed a "single employer" with any Seller or its Affiliates under Section 414 of the Code or under "common control" with any Seller or its Affiliates under Section 4001(b)(1) of ERISA.

**16.13.6** *"Including"* (whether or not capitalized, along with variants thereof) means "including, without limitation."

**16.13.7** *"Law"* means any law, statute, rule, code, executive order, ordinance, regulation, ruling or judgment of any governmental entity or any order, writ, injunction or decree, whether preliminary or final, entered by any governmental entity.

**16.13.8** *"Losses"* means any and all claims, liabilities, obligations, damages, losses, costs, expenses, penalties, fines, interest and judgments (at equity or at Law, including statutory and common) and damages whenever arising or incurred (including amounts paid in settlement, costs of investigation, reasonable attorneys' fees and expenses and the allocated fees and expenses of in-house counsel).

**16.13.9** *"Tax"* or *"Taxes"* means, with respect to any person or entity, all (a) United States federal, state, or local or non-United States taxes, duties, levies, or other similar governmental charges, including all income taxes (including any tax on or based upon net income, gross income, or income as specially defined, or earnings, profits, or selected items of income, earnings, or profits), profits, capital gains, gross receipts, capital stock, occupation, property, excise, severance, value added, alternative minimum, environmental, customs, social security (or similar), sales, use, ad valorem, transfer, franchise, license, withholding, payroll, employment, or windfall profits taxes, alternative or add-in minimum taxes, social security (or similar) unemployment, disability, escheat and other taxes, duties, fees, levies, or other similar governmental charges of any kind whatsoever, whether disputed or not, together with all estimated taxes, deficiency assessments, additions to tax, penalties, and interest; and (b) any liability for the payment of any amount of a type described in clause (a) arising as a result of being or having been a member of any consolidated, combined, unitary, or other group or being or having been included or required to be included in any Tax Return related thereto or as a result of any tax sharing, tax indemnity, or tax allocation agreement or any other express or implied agreement to assume Taxes of any other person or entity or indemnify any person or entity.

**16.13.10** *"Tax Returns"* means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

* * * *

*[Signature page follows]*

EXHIBIT 3
Page 12 Of 13

**BUYER:**  Saxum Stone, LLC:

_____
Tony Klincke, Member

**SELLER:**  Bankruptcy Estates of Wall to Wall Tile &
Stone-Oregon LLC, an Oregon limited
liability company; Wall to Wall Tile & Stone,
LLC, a Washington limited liability company;
and Wall to Wall Tile & Stone-Idaho LLC, an
Idaho limited liability company

_____
Amy Mitchell, Trustee

EXHIBIT 2
Page 13 Of 13

## Bill of Sale

BILL OF SALE, dated as of May 14ᵗʰ, 2020 (this **"Bill of Sale"**), from Amy Mitchell, trustee of the bankruptcy estates of Wall to Wall Tile & Stone-Oregon LLC, an Oregon limited liability company, Wall to Wall Tile & Stone, LLC, a Washington limited liability company, and Wall to Wall Tile & Stone-Idaho LLC, an Idaho limited liability company (together "**Seller**"), to Saxum Stone LLC, a Washington limited liability company ("**Buyer**").

WHEREAS, Seller and Buyer have entered into an Agreement for Sale and Purchase of Business Assets (the "**Agreement**"; unless otherwise defined herein, capitalized terms shall be used herein as defined in the Agreement), pursuant to which Seller has agreed to sell, assign, and transfer to Buyer, and Buyer has agreed to purchase and acquire from Seller, the Assets, and Buyer has agreed to assume the Assumed Liabilities; and

WHEREAS, the execution and delivery of this Bill of Sale by Seller is required by Section 4.1 of the Agreement;

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer do hereby agree as follows:

**Sale and Assignment of Assets.** On the terms and subject to the conditions set forth in the Agreement, Seller hereby sells, assigns, transfers, conveys, and delivers unto Buyer and its successors and assigns, forever, the entire right, title, and interest of Seller free and clear of all Liens in and to the Assets.

**Assumption of Assumed Liabilities.** On the terms and subject to the conditions set forth in the Agreement, Buyer hereby assumes no liabilities of Seller other than the lease liabilities in Schedule 1.2 and the obligation to pay chapter 7 administrative rent, remove personal property, and vacate the leased premises that are not subject to assumption and assignment.

**Further Action.** Seller shall, at the request of Buyer, use its reasonable best efforts to timely execute and deliver any additional documents and perform such additional acts that may be necessary, proper, and advisable under applicable legal requirement to grant, sell, convey, assign, transfer, set over to, or vest in Buyer any of the Assets.

**No Third Party Beneficiaries.** This Bill of Sale shall be binding upon and inure solely to the benefit of the parties to the Agreement, and their respective successors and assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person, any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Bill of Sale.

**Interpretation.** The respective rights of Seller, on the one hand, and Buyer, on the other, with respect to the Assets sold, transferred, assigned, and conveyed hereby and the assumption of the lease obligations in Schedule 1.2 hereunder shall be governed exclusively by the Agreement and the Sale Order, and nothing in this Bill of Sale shall alter any liability or obligations arising under the Agreement, which shall (without limiting the generality of the foregoing) govern, and shall contain the sole and exclusive representations, warranties, and obligations of the parties with respect to the rights and obligations sold, transferred, assigned, conveyed, and assumed

EXHIBIT 3
Page 1 Of 2

hereunder. If there is any conflict or inconsistency between the provisions of the Agreement and this Bill of Sale, the provisions of the Agreement shall govern.

**Governing Law.** This Bill of Sale will be governed by and construed under the laws of the State of Oregon, without regard to conflicts-of-laws principles that would require the application of any other legal requirements and, to the extent applicable, the Bankruptcy Code.

**Counterparts.** This Bill of Sale may be executed and delivered (including electronically) in counterparts, each of which, when executed, shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

IN WITNESS WHEREOF, this Bill of Sale has been duly executed as of the date first above written.

SELLER:          Bankruptcy Estates of Wall to Wall Tile & Stone-Oregon LLC, an Oregon limited liability company, Wall to Wall Tile & Stone, LLC, a Washington limited liability company, and Wall to Wall Tile & Stone-Idaho LLC, an Idaho limited liability company.

Amy Mitchell, Trustee

EXHIBIT 3
Page 2 of 2

# Thomas K. Wolf, LLC.

❖ ❖ ❖ ❖ ❖

An Oregon Limited Liability Company Established
For Legal Representation Of Clients

Thomas K. Wolf, Esq.
tom@tkwllc.com

Tammy L. Wolf, CLA
tlw@tkwllc.com

5200 SW Meadows Rd., Suite 150
Lake Oswego, OR 97035
Phone (503) 697-8455, Fax (503) 697-8552
(Bend Office: P.O. Box 6507, Bend, OR 97708-6507)

June 12, 2020

Lennar Multifamily Communities, LLC
Lennar Multifamily Builders, LLC
Attention: Joe Sullivan, Attorney
Via Email To: jsullivan@jmspclaw.com

Re: **Our Client: Saxum Stone LLC**
    Our File No. 5360-1

Dear Mr. Sullivan,

This office has been retained by Saxum Stone LLC ("Saxum") to collect from Lennar Communities, LLC and Lennar Multifamily Builders, LLC the balances due for materials and labor supplied and performed at the new construction at Jantzen Beach (Glisan Apartments) and Kirkland (Totem Lake Apartments) by Wall-To-Wall Tile & Stone ("Wall-To-Wall"). As I believe you are aware, Saxum Stone purchased all of Wall-To-Wall's accounts receivable in its bankruptcy. Attached is a copy of the Bankruptcy Court's Order ...Approving Sale Of Estate Assets Free And Clear Of All Liens, Claims And Encumbrances.

At this time, your clients' job accounts amount to:

- Jantzen Beach: $153,850.86; and
- Kirkland: $73,149.93. (Attached are copies of the job accounts and outstanding invoices)

To avoid further collection actions, including the filing of a construction lien, and collection expenses please have your client pay the above sums within 10 days of today's date. Thank you.

Sincerely,

/s/Thomas K. Wolf
Thomas K. Wolf
TKW/tlw
cc Tony Klincke and Charlie Zupsic
   Enclosures

EXHIBIT 4
Page 1 Of 1